UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| RICKY D. JACKSON, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | Case No. 4:15CV01736 ERW |
| GEORGE LOMBARDI, et al., | ) | |
| Respondent. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Ricky D. Jackson's *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [1].

## I. BACKGROUND

Petitioner Ricky D. Jackson ("Petitioner") was charged and convicted of two counts of forgery in violation of Missouri Revised Statute § 570.090. Petitioner was sentenced to five years imprisonment on each count, to run consecutively. His conviction was affirmed by the Missouri Court of Appeals, Southern District. Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. His motion was denied and the judgment was affirmed on appeal.

The Missouri Court of Appeals for the Southern District described the facts of Petitioner's conviction as follows:

> In 2004, the Peoples Bank of Altenburg foreclosed on a commercial building owned by Appellant and used as an auto repair shop. The building was located in Scott County. After the foreclosure, [Petitioner] began sending the bank "some kind of legal documents" that the bank's President and CEO Matthew Puchbauer had not seen before. Mr. Puchbauer did not consent to any lien on any of his property in favor of [Petitioner], and has never borrowed any money from

1

[Petitioner]. Mr. Puchbauer did not respond to [Petitioner's] documents, and did not agree to the documents.

. . .

The second and third pages of [State's Exhibit 1] purport to be a Uniform Commercial Code Acknowledgment of Initial Financing Statement ("UCC Acknowledgment"). The UCC Acknowledgment showed [Petitioner] as the Secured Party and [Petitioner], Peoples Bank of Altenburg, Doug Johnson, Matt Puchbauer, Equifax, Experian, and Transunion as Debtors. The UCC Acknowledgment was not signed by any person identified as a Debtor or [Petitioner]. In an area labeled "Collateral," the UCC Acknowledgment stated:

> The Debtors have consented to this Admiralty Maritime lien filing in the International Commercial Claim Within the Admiralty Administrative Remedy Judgment by Estoppel Agreement/Contract File #RDJ01022005, Registered # PR 799 080 690 US, perfected on May 2, 2005 in the accounting and True Bill amount of $52,496,006.16. All personal and real property; bank accounts, foreign and domestic; private exemptions; government risk management accounts; insurance policies; stocks and bonds; asset accounts; investments and future earnings of the Debtors is now the property of the Secured Party.

The UCC Acknowledgment showed a "File Date/Time" of "10/11/2005 12:49AM."

The first page of [State's Exhibit 2] contains the phrases "Petition for Agreement and Harmony within the admiralty in the Nature of a **NOTICE OF INTERNATIONAL COMMERCIAL CLAIM IN ADMIRALTY ADMINISTRATIVE REMEDY**," "FILE #RDJ01022005," and "Date: January 2, 2005." [Petitioner] appears to have signed the exhibit on pages 6 and 11. In an area labeled "**ACCOUNTING AND TRUE BILL**" on page 10 of the exhibit, the following items are listed: "Compensatory Damages" in the amount of $261,174.16 ($65,293.54 "Sum Certain of Actual Cost Funds" multiplied by a "Rights Violations Compensation Multiplier" of 4), "Punitive Damages" in the amount of $52,234,832.00 ($261,174.16 "Sum Certain of Actual Cost Funds" multiplied by a "Punitive Compensation Multiplier" of 200), and "Total Damages for Conversion" in the amount of $52,496,006.16.

[Petitioner's] sister-in-law, Sheila Camden, and [Petitioner's] son attempted to file the UCC Acknowledgment with the Scott County Recorder of Deeds on October 11, 2005. The Recorder refused to file the document. Ms. Camden testified that she handed the UCC Acknowledgment to [Petitioner's] son when they arrived outside of the Recorder's office, Ms. Camden and [Petitioner's] son then went upstairs, and [Petitioner's] son handed the UCC Acknowledgment to the clerk. After the Recorder refused to file the UCC Acknowledgment,

> [Petitioner] "typed" a written statement for Ms. Camden's signature . . . At [Petitioner's] request, Ms. Camden signed that page and then mailed [it] to the Recorder of Deeds. Ms. Camden did not have "any actual personal knowledge" about the UCC Acknowledgment. Ms. Camden frequently notarized documents for [Petitioner] in 2004 and 2005 that [Petitioner] printed from his computer. Ms. Camden also mailed documents for [Petitioner]. Ms. Camden notarized several documents for [Petitioner] . . . that were related to the UCC Acknowledgment.
>
> The Recorder of Deeds testified that Ms. Camden told the Recorder, "[Petitioner] wanted the [UCC Acknowledgment] on record." [Petitioner] called the Recorder, and told the Recorder "just record the damn thing." The Recorder again refused to record the UCC Acknowledgment. The Recorder "was guessing that it was a . . . fraudulent document. I mean, it's talking about $52 million, and I haven't got many $52 million financing statements." The form also "looked a little suspicious" to the Recorder, and did not appear to be authorized by statute.

ECF No. 12-5, pgs. 2-6.[1] At trial, Petitioner represented himself after his last retained attorney was granted permission to withdraw. An attorney was not appointed, because Petitioner was not indigent. Petitioner was convicted by a jury and sentenced to two consecutive five-year terms of imprisonment. Petitioner now challenges his convictions.

## II.    STANDARD

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] These facts are taken directly from the Court of Appeals Memorandum affirming Petitioner's conviction on direct appeal. A state court's determination of a factual issue made by a State court shall be presumed to be correct. 28 U.S.C. § 2254(e).

28 U.S.C. § 2254(d)(1)-(2). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Garth*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). An unreasonable application of clearly established Supreme Court precedent is found where the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts of the case. *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id.*

## III. DISCUSSION

Petitioner asserts seven claims in his motion to vacate. First, he claims he is actually innocent, because, according to Petitioner, a false statement in an original document does not count as forgery, and the notary acted within her authority to do so.[2] Second, he contends he was denied his right to counsel, because the counsel he hired refused to follow instructions and the circuit court refused to appoint counsel. Third, he states he was denied due process of law under the Fourteenth Amendment of the United States Constitution, because officers of the court violated their codes of conduct. Fourth, he asserts the double jeopardy clause applies to his case.

---

[2] Petitioner's claim focuses on whether the notary, his sister-in-law, had authority to notarize the documents. However, as explained below, the authority at issue in this matter is the Bank's authority, not the notary's.

4

Fifth, he claims his convictions should be vacated, because they impair the obligations of contracts. Sixth, he contends the circuit court did not have jurisdiction or standing over his convictions because the agreement or contract is clearly controlled by federal law. Finally, he claims his conviction should be vacated, because the officers of the court violated their oaths of office.

    *A.      Claim One – Actual Innocence*

In his first claim, Petitioner argues he is actually innocent. He asserts "a false statement in an original document does not qualify as a Forgery with purpose to defraud." Further, he contends the state did not prove the notary did not have the authority for which Petitioner recruited her.

The Missouri Court of Appeals addressed the sufficiency of the evidence to support Petitioner's guilty verdicts in its opinion on Petitioner's direct appeal. The Missouri Court of Appeals held the evidence from which a reasonable juror could have found Petitioner guilty is contained in the UCC Acknowledgment, because it purports to have been made by the authority of Peoples Bank of Altenburg and Mr. Puchbauer, but it was not. Additionally, the appellate court held Mr. Puchbauer's testimony that he did not respond or agree to these documents, did not consent to a lien on his property, and never borrowed any money from Petitioner, was sufficient to permit a reasonable juror to infer beyond a reasonable doubt that neither the bank nor Mr. Puchbauer gave authority to Petitioner. Finally, the evidence was sufficient to show Petitioner made the writing with the purpose to defraud the bank, because the writing appeared frivolous on its face, multiple witnesses testified that a recorded lien impairs the ability of the owner to dispose of the property, and the bank had recently foreclosed on Petitioner's commercial building.

Because Petitioner's claim has already been ruled on by the state court, Petitioner must show the decision was contrary to or involved an unreasonable application of federal law or the decision was based on an unreasonable determination of the facts based on the evidence. 28 U.S.C. § 2254(d)(1)-(2). "A federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Petitioner is unable to show the state court decision was objectively unreasonable. Petitioner's argument focuses on the authority of the notary, his sister-in-law. However, as explained by the Missouri Court of Appeals, the authority the state had to prove was the bank's or Mr. Puchbauer's authority to make the writing, not the notary. Further, the appellate court was not objectively unreasonable in finding there was sufficient evidence to establish Petitioner acted with purpose to defraud when Petitioner attempted to file the document shortly after the bank foreclosed on his property and the document was frivolous on its face asking for $52 million in damages. Because the state court's decision was not objectively unreasonable, the Court will deny Petitioner's claim as to the sufficiency of the evidence and his actual innocence.

In his first claim, Petitioner also seems to be making an argument his conviction violates the First Amendment of the Constitution. He asserts "the 14th Amendment does not permit a state to make criminal the peaceful expression of unpopular views." Petitioner has never raised this claim in state court; therefore, it has not been exhausted and is procedurally defaulted in this Court. *Coleman v. Thompson*, 501 U.S.722, 731 (1991) ("A state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies . . . the

States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.").

   B.   *Claim Two – Denial of Counsel*

In his second claim, Petitioner asserts he was denied his right to counsel. He claims the circuit judge let his retained counsel withdraw over his objection and did not appoint him counsel, because it found him not to be indigent. Additionally, he argues counsel who does not follow instructions is like no counsel at all.

Although Petitioner raised this claim in his post-conviction relief motion, Petitioner did not raise this claim in his direct appeal. Therefore, Petitioner's claim is procedurally defaulted and cannot be raised in his federal habeas petition. "It has been settled for nearly a century that a state prisoner must normally exhaust available state remedies before a writ of habeas corpus can be granted by federal courts." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). The petitioner must present the claim to the state court in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72 (1977). A claim may be considered if the petitioner can show cause for his procedural default and actual prejudice or if he can show the failure to consider the claim will result in a fundamental miscarriage of justice, because he is actually innocent. *Wallace v. Lockhart*, 12 F.3d 823 (8th Cir. 1994). Petitioner is unable to show cause for his procedural default and actual prejudice or that failure to consider his claim will result in a fundamental miscarriage of justice.

Even if Petitioner had not procedurally defaulted this claim, the Court would still deny the claim, because the circuit court's decision on this claim during post-conviction relief proceedings was not an unreasonable application of federal law. The circuit court described the facts concerning this issue as follows:

In January of 2006, [Petitioner] hired private attorney Stephen C. Wilson of Cape Girardeau, Missouri, to represent him in the pending criminal case. Attorney Wilson continued to represent [Petitioner] over the next 30 months and during that time appeared in court with [Petitioner] numerous times and filed several motions on [Petitioner's] behalf. . . On July 18, 2008, attorney Stephen C. Wilson filed his Motion to Withdraw citing the reason that [Petitioner] desired to obtain new legal counsel. The motion to withdraw was granted on July 21, 2008 . . .

[Petitioner] did not employ legal counsel as directed and during the next seventeen (17) months [Petitioner] appeared in court numerous times representing himself, pro se . . .

On February 9, 2009, the state filed an information charging [Petitioner] with two counts of forgery as originally charged in December of 2005 . . . [Petitioner] appeared in court on June 11, 2009, and requested additional time to research waiver of legal counsel. Almost six weeks later on July 20, 2009, [Petitioner] appeared, signed and submitted his written WAIVER OF RIGHT TO ASSISTANCE OF COUNSEL, which was accepted by the court . . .

On December 14, 2009, attorney Scott Rosenblum from St. Louis, Missouri, entered his appearance on behalf of [Petitioner] and the scheduled jury trial was continued at the request of [Petitioner] . . .

The case was again set for jury trial on June 7, 2010. On May 24, 2010, attorney Scott Rosenblum filed a Motion to Withdraw as Counsel, stating that [Petitioner], on May 21, 2010, had advised that he was terminating their attorney/client relationship. In a pleading filed pro se by [Petitioner], titled "Administrative Notice; In the Nature of Writ of Error Coram Nobis & a Demand for Dismissal or State the Proper Jurisdiction" an attached email from [Petitioner] to attorney stated that his law firm is hereby FIRED, FIRED, FIRED for poor representation. Further examination of the attachments to that pleading discloses that [Petitioner] fired the attorney for refusing to sign a contract titled "AGREEMENT AND ACCEPTANCE TO CONTRACT." A copy of the contract is attached to that pleading and among other things seeks to require that attorney to agree that he is knowledgeable in all areas of Admiralty Maritime Law and to agree that failure to abide by all terms of the contract will be considered "Ineffectiveness of Counsel."

On June 7, 2010, the scheduled jury trial date, the Motion for Counsel to Withdraw was taken up and sustained. At that time [Petitioner] requested that he be appointed legal counsel and the court allowed [Petitioner] time to apply for public defender assistance. On that date the [Petitioner] stated to the court, ". . . *all I need to do is for the Court to appoint me assistance of counsel to show me the proper way to file stuff into your records . . .*" [Petitioner] later tells the court that he would conditionally accept a public defender "*as long as he comes on the*

> *record as assistance of counsel.*" [Petitioner] said he was requesting the assistance of counsel "*just to help me file papers.*"
>
> [Petitioner] appeared on June 22, 2010, and was advised that his Application and Affidavit for Public Defender Services had been denied by the Public Defender Office, upon the finding that [Petitioner] was not indigent. The judge advised [Petitioner] at that time that he would not appoint him legal counsel.
>
> On July 19, 2010, [Petitioner] appeared before the court without counsel. The court noted that it had continued the case to that date so that [Petitioner] could hire an attorney. [Petitioner] replied that he had been unable to find "*counsel that will actually contract with me.*" The court again advised the [Petitioner] that he needed to get a lawyer and discuss the case and noted for the record that the court had made numerous rulings that [Petitioner] was not indigent. The court read to [Petitioner] the full WAIVER OF RIGHT TO COUNSEL executed by him on July 20, 2009. By doing so, the court again fully advised [Petitioner] of the perils of self-representation. [Petitioner] objected to the waiver and expressed his desire to rescind his signature. The court overruled [Petitioner's] objection and again found him to not be indigent. [Petitioner] responded by stating that, "*. . . I'm not asking the Court and everything to appoint me counsel to represent me. All I'm asking is for the Court to appoint me assistance of counsel and everything to show me the proper procedures before this Court.*" The court again declined to appoint an attorney to represent [Petitioner]. The case was then scheduled for jury trial on October 26, 2010, and the court advised [Petitioner] that he should be prepared to proceed to trial on that date with or without an attorney as no further continuances would be granted.

ECF No. 12-6, pgs. 119-123. The circuit court held Petitioner, through motions, statements and arguments to the court throughout his criminal case, expressed his desire to personally present and pursue the defenses he chose. Further, the court found his waiver of right to assistance of counsel was knowingly, intelligently, and voluntarily made and the trial court did not abuse its discretion in refusing to allow Petitioner to rescind his written waiver of counsel. The court also determined the trial court did not err in finding Petitioner was not indigent, because he posted a $25,000.00 bond, hired and fired two private attorneys, paying the first attorney $3,000.00 and the second attorney $5,000.00, and testified he has tools related to his business if he needed to go out and get a job. The court held a waiver of the right to assistance of counsel may also be

implied from Petitioner's conduct in this case. It stated "[Petitioner's] uncooperative behavior throughout this case is well documented in the court file and in pre-hearing and trial transcripts. Petitioner's behavior during the case bordered on contemptuous and the five (5) judges involved in the case showed great patience with the [Petitioner] and went to extremes to protect his constitutional rights." Finally, the court held Petitioner did not have a constitutional right to hybrid counsel. The Missouri Court of Appeals affirmed the circuit court's denial of Petitioner's post-conviction relief motion.

Petitioner must show the decision was contrary to or an unreasonable application of federal law or the decision was based on an unreasonable determination of the facts based on the evidence, which he is unable to do. 28 U.S.C. § 2254(d)(1)-(2). He cites no authority which suggests the circuit court unreasonably applied federal law. Therefore, for the reasons stated above, Petitioner's claim must be denied.

        *C.*     *Claim Three – Alleged Denial of Due Process*

In his third claim, Petitioner asserts he was denied due process under the Fourteenth Amendment of the Constitution. Petitioner claims officers of the court violated the codes of judicial conduct and the Missouri Supreme Court's Rules of Professional Conduct and did not follow the rule of law. Petitioner argues this occurred in the following five incidents: (1) Scott County Prosecutor Paul Boyd turned a civil matter into a criminal matter without probable cause, violated court subpoenas, and allowed false testimony be presented to the jury; (2) Judge Gary Kamp denied Petitioner counsel, failed to recuse himself for bias, and acted without jurisdiction; (3) Judge Satterfield denied Petitioner counsel and submitted facts not in the record to make his ruling; (4) appellate judges added facts not in the record; and (5) public defenders did not follow his instructions.

Petitioner's third claim is not cognizable. Petitioner must allege claims that his custody violates the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Potential violations of the Judicial Code of Conduct or the Missouri Rules of Professional Conduct are not violations of the Constitution or the laws of the United States. Thus, Petitioner's third claim must be denied.

D.     *Claim Four – Double Jeopardy*

In his fourth claim, Petitioner alleges his two convictions violate the double jeopardy clause of the Fifth Amendment of the Constitution. Petitioner claims two charges were submitted for one writing with the same purpose to defraud, without stating the date or time to support the writings or even describing the writing in question as a forgery.

Petitioner's fourth claim is procedurally defaulted because he did not raise it on direct appeal.[3] The state must be "provided an opportunity for full and fair litigation of the claim." *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997). Petitioner has not established cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default. Thus, the Court will deny Petitioner's fourth claim.

E.     *Claim Five – Impairment of Contracts*

In his fifth claim, Petitioner argues his convictions impair the obligations of contracts. Petitioner claims these were raised in Southern District Court of Appeals, but the Court is unable to find any support for this statement. Because Petitioner did not raise this claim before the state court, his claim is procedurally defaulted and must be denied.

F.     *Claim Six – Jurisdiction and Standing*

---

[3] Petitioner did raise this issue in his post-conviction relief motion and appeal. However, he must first have raised it on direct appeal. The Missouri Court of Appeals denied this claim in its opinion on Petitioner's post-conviction appeal. This decision is entitled to deference. 28 U.S.C. § 2254(d)(1)-(2).

In his sixth claim, Petitioner asserts the state did not have jurisdiction over the "Notorial Protest Administrative Remedy." He claims this case is under commercial law and federal jurisdiction. Additionally, he states the agreement/contract and the UCC Financing Statement are controlled by federal law. He also claims he has been "profiled" by officers of the court, because he is a member of the sovereign citizen movement. He asserts "they have created a criminal conspiracy to coerce me to stop the fight for my estate and civil rights . . ."

Petitioner raised this claim in his *pro se* post-conviction relief motion, but the circuit court did not rule on it and only addressed the claims raised by Petitioner's counsel in his amended post-conviction relief motion. Petitioner's claim is not cognizable on federal habeas review, because he does not cite to any provisions of the Constitution or federal law in support of his claim. Because, his claim does not raise any violations of the United States Constitution or the laws of the United States, it must be denied. 28 U.S.C. § 2254(a).

### G. Claim Seven – Violations of Oaths of Office

In his final claim, Petitioner asserts officers of the court did not honor their own court rules and color of law. Petitioner claims he was trying to use and follow the laws as they are written to find a remedy to a transgression. Similar to claim six, this claim is not cognizable on federal habeas review, because Petitioner does not cite to any provisions of the Constitution or federal law in support of his claim. 28 U.S.C. § 2254(a). Therefore, it will be denied.

### IV. CERTIFICATE OF APPEALABILITY

The Court finds Petitioner has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing

the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims raised in Petitioner's § 2254 Motion.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Ricky D. Jackson's *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [1] is **DENIED** and his claims shall be **DISMISSED**.

So ordered this 29th day of May, 2018.

*E. Richard Webber*

_____
**E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE**